**PEACH STATE MEAT CO., d/b/a Codi Wholesale Meats, Plaintiff,**

v.

**EXCEL CORPORATION, Defendant.**

Civ. No. 93–34–ALB/AMER(DF).

United States District Court,
M.D. Georgia,
Albany/Americus Division.

July 25, 1994.

Charles C. Murphy, Jr., Michael A. Cole, Atlanta, GA, for plaintiff.

William H. Boice, James F. Bogan, III, Atlanta, GA, for defendant.

### ORDER

FITZPATRICK, District Judge.

Defendant, Excel Corporation ("Excel"), has moved this Court for summary judgment. It contends that no contract exists between the parties giving Plaintiff an exclusive right to sell meat products to the United States military in the Southeastern United States. Defendant also argues that there has been no fraud committed.

The Court heard oral argument in this case on June 29. After careful consideration of the argument of counsel, the briefs, the entire record, and the relevant case law, the Court is prepared to enter the following Order.

### BACKGROUND FACTS

Plaintiff (or "Codi") is a distributor of meat products. It purchases beef and pork from processors or packers and then resells the goods to retail sellers. Codi was incorporated in 1966.

Defendant is a meat packer. It sells beef and pork product both under its brand name and as generic beef or pork.

In the late 1980s, Plaintiff sold meat products to various commissaries aboard military bases in the southeastern United States. Most of these sales were pursuant to a Blanket Purchase Agreement. These agreements did not require the supply of a particular brand of product and authorized sales to commissaries on an as needed basis.

In 1989, Excel authorized Codi to represent it for all sales of Excel Brand meat to the Southeast Army Region for Blanket Delivery Orders. Under this noncompetitive method of purchasing, the military agency issues a supply bulletin to the exclusive purveyor of a particular brand of product. The manufacturer of the product must certify and authorize the distributor to be its exclusive agent for the sale of its product to the military before a supply bulletin will be issued to the distributor.[1]

In 1991, the Government changed the way that it did business in order to eliminate disparities in price and quality between commissaries serving different branches of the armed forces in the same geographic region. The Defense Commissary Agency ("DeCA") was created to accomplish this goal. The former purchasing regions for each branch of

---

1. For purposes of clarification, the Court will explain its understanding of the two types of procurement. If a commissary at Hunter Army Airfield wanted to purchase Oreo cookies, it could issue a supply bulletin to the exclusive purveyor of that brand of product.

By contrast, a Blanket Purchase Agreement is a competitive system that authorizes the pur-
chase of a generic product. If the commissary at Hunter Army Airfield wished to purchase chocolate cookies with white cream filling, it could use the Blanket Purchase Agreement. Supply Bulletins are not required for, nor do the regulations governing them apply to, purchases under a Blanket Purchase Agreement.

the military, such as the Southeast Army Region where Codi had the exclusive right to sell Excel meat, were eliminated.

To further the goal of providing quality product at a reasonable price, DeCA advertised what it called the Seminole I contract in May 1992. This contract was intended to supply all commissaries for all branches of the service in the South. It required competition not only on price but also on separate quality factors that were a modification of industry standards. The military referred to Seminole I as a "best value" contract. The services were not interested in a particular brand of beef, rather the contract was specifically designed to insure a consistent quality of beef in all commissaries in the South.

Shortly after the Seminole I contract was advertised, Codi called Excel to obtain the quality information necessary to bid on the contract. Codi was told that much of that information was proprietary and confidential and would not be disseminated. Excel also told Codi that it was considering bidding on Seminole I itself. The uncertainty was due to Excel's pending decision regarding whether or not to develop new products to satisfy the requirements of the contract.

Ultimately, 60% of the Seminole I contract was awarded to Excel. Codi attempted to challenge the agency action, but failed to do so in a timely manner. It then filed this lawsuit.

### DISCUSSION

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment bears the initial burden of showing that there are no genuine issues of material fact that should be decided at a trial of the case and that the movant is entitled to judgment as a matter of law. Once the movant carries this threshold matter, the burden shifts to the nonmoving party to demonstrate that there is indeed a material issue of fact or law precluding summary judgment. *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Where relevant facts are in controversy, "all reasonable doubts ... are to be resolved and all inferences ... are to be drawn in favor of the party opposing the motion." *Mack v. W.R.*

*Grace Co.*, 578 F.Supp. 626, 630 (N.D.Ga. 1983).

There are two causes of action in this case. First, Codi asserts that a contract of exclusive representation existed that prevents Excel from selling beef to the military except through it. Second, Codi contends that it was fraudulently mislead into believing that Excel would provide product and the necessary information so that Codi could bid on Seminole I.

### I. Existence of an Exclusive Representation Contract

Plaintiff argues that the authority granted by Excel to represent it for sales of Excel Brand Beef to Southeastern Region Army commissaries created an exclusivity contract between them with respect to sales to the United States Armed Forces for all purposes. Such a reading of the letter, taken together with the circumstances surrounding Seminole I, is simply unreasonable.

There is no dispute that Excel granted Codi permission and authority to sell its brand name beef to military commissaries in the southeast. Mr. Meiergerd's letter of April 6, 1987, (Exhibit C to Plaintiff's response to the motion for summary judgment) clearly provides a right to distribute the brand. In 1989, Ms. Magnuson further authorized Codi to perform as the exclusive representative for Excel with respect to supplying United States Army commissaries in the Southeast Region. The fact that the Army then issued Supply Bulletins to Codi reinforces the fact that there was an exclusive relationship between Codi and Excel for the Southeastern Region of the Army. There is no evidence in this record that Codi received supply bulletins from any other branch of the service for Excel brand beef.

■ The exclusive relationship with respect to the Army, nor the more general authority to sell generic Excel beef to the Government, does not extend to the new method of purchasing established by the creation of the Seminole I contract. With the creation of the DeCA in 1991, the Southeastern Army Region ceased to exist. Through no fault of Excel, the exclusive relationship

between it and Codi with respect to supplying Army commissaries was terminated. If one "contracts to perform covenants that are impossible, not because of an act of God or the conduct of [a party], the failure to perform … is as fatal to a plaintiff's right to recover as a breach of contract for any other reason." *Friedman v. Goodman*, 222 Ga. 613, 617, 151 S.E.2d 455, 459 (1966). Once there was no Southeast Army Region to supply, the exclusive representation authority granted by Excel to Codi became impossible to perform. Simple common sense establishes the conclusion that Codi can no more recover from Excel for an alleged breach of this agreement than Excel could recover from Codi for its failure to purchase meat to resell to the Southeast Army Region. *See J.C. Penney Co. v. Davis & Davis, Inc.*, 158 Ga.App. 169, 279 S.E.2d 461, 464 (1981). The impossibility of performance effectively terminated any possible agreement that may have existed between the parties.

While the Court has concluded that the alleged contract terminated through impossibility, the Court doubts that a contract of the type alleged by Codi ever existed.[2] Codi asserts that it had the exclusive right to sell Excel's meat products to all military installations in the southeast. This argument is simply not supported by the record.

Excel's license to Codi clearly encompassed only the Southeastern **Army** Region. (See Exhibit A to the Affidavit of Denise Magnuson). Excel was free to sell its product under other methods of procurement to commissaries for other branches of the Armed Forces. Codi does not dispute Excel's statement that the authority granted it by Excel in 1989 did not affect its sales of Excel meat products to commissaries for other branches of the services that did not use the Supply Bulletin method of procurement. Quite clearly, the type of relationship Codi

thought it possessed existed only in its own unilateral understanding of the relationship.

■ Codi argues that its belief and understanding of the affiliation it had with Excel created an exclusive relationship. The court disagrees. A unilateral belief or supposition that a contract exists is insufficient to support the formation of a contract. Both parties must mutually agree on the terms and conditions of each parties' obligations under the contract. *See Daly v. Harris*, 33 Ga. Supp. 38 (1864); *Singer v. Grand Rapids Match Co.*, 117 Ga. 86, 43 S.E. 755 (1903); *Taylor Lumber Co. v. Clark Lumber Co.*, 33 Ga.App. 815, 127 S.E. 905 (1925). It is clear from the letters that Codi asserts supports its position, as well as from the uncontroverted evidence tendered by Excel, that Excel never intended to enter into any type of exclusive relationship with Codi for any other purpose than sale of Excel brand name beef to Army commissaries in the Southeast Region. Both parties did not agree to the same thing, therefore there can be no contract. *Singer*, 117 Ga. at 92, 43 S.E. 755.

Defendant also argues that the alleged contract is unenforceable because there is no mutuality of obligation and because it contains no price term. The contract as it is understood by Codi is listed in responses to Interrogatories 3 and 4. Excel notes that in the contract as alleged by Codi there is no obligation by Codi to purchase anything from Excel, but Excel is prohibited from selling any of its product to military bases in the Southeast. In addition, there is no price term contained in the responses to the Interrogatories.

As Defendant correctly argues, the want of mutuality cannot be cured by any course of dealing.

**2.** Though not argued in the motion for summary judgment, Defendant plead the statute of frauds, O.C.G.A. § 13–5–30, as its third defense to this action. Assuming that some contract existed, it is arguably voidable for violation of the statute of frauds. Plaintiff's argument concedes that there was no single written instrument that defines the relationship between the parties. It relies primarily on the course of dealing between the two companies and federal regulations to establish its

claim for exclusivity. There is no letter, group of letters, or other written material that is sufficient to establish a written contract. The relationship lasted from 1989 until 1992, clearly more than one year. Since the alleged contractual relationship existed more than one year, it should have been in writing. If in fact it was not, summary judgment on this argument would probably be appropriate.

The fact that quantities from time to time were purchased by [the buyer] from [the seller] did not convert the agreement into a bilateral contractual obligation in the future, because such purchases still did not obligate [the buyer] to the purchase of any definite quantities.

*Wedgewood Carpet Mills, Inc. v. Color–Set, Inc.*, 149 Ga.App. 417, 420, 254 S.E.2d 421, 424 (1979). Without this essential term, any possible contract is unenforceable.

Also missing from this "contract" is any mention of the price to be paid for the goods. Price is not absolutely essential in a contract for the sale of goods. O.C.G.A. § 11–2–305 (1982). Defendant's argument that the contract is unenforceable because of this missing term is unpersuasive.

■ Plaintiff complains that Excel is seeking to avoid their contractual obligation by "quibbling" with the terms of the contract. The court is required to apply the law as it finds it to the facts as presented by the parties. Plaintiff argues that O.C.G.A. § 11–2–306 requires a conclusion that there was mutuality of obligation in this relationship. That code section deals with output or requirements contracts. There is no evidence in this record that Codi agreed to purchase all of its requirements from Excel, much less that Excel agreed to sell all of its output to Codi. Other than Codi's assertion to the contrary, there is simply nothing to support a conclusion that O.C.G.A. § 11–2–306 applies to this situation.

The court has found that no contract, at least as envisioned by Codi, ever existed. There is no mutuality of obligation, thus making any perceived contract unenforceable. The court has also concluded that any alleged contract for exclusivity terminated with the elimination of the Southeast Army Region. No reasonable jury could arrive at a contrary conclusion based on the record as it is before the court; therefore, summary judgment is appropriate in favor of Defendant on the contract claim.

## II. Codi's Fraud Claim

■ Plaintiff has also alleged that it was fraudulently mislead by Excel into believing that Excel would supply product to Codi for performance of the Seminole I contract. This allegation is based upon a conversation between Don Delaney for Codi and Lisa Allen for Excel. Mr. Delaney allegedly initiated this telephone call to obtain information necessary to comply with the bidding procedures for Seminole I. He was essentially told that much of the information he sought was proprietary or otherwise "not available" and that Excel did not know whether it was going to bid on the contract itself. (Deposition of Lisa Allen pp. 64–70). Codi now claims that Excel's statement that it did not know if it planned to enter a bid for Seminole I was a fraudulent misrepresentation by Excel. The court disagrees.

■ Under Georgia Law, a plaintiff that asserts a cause of action for fraud must prove:

[A] misrepresentation of a material fact by the defendant, made with the knowledge that it was false or with reckless disregard as to whether it was true, and with intent to deceive the plaintiff, whereby the plaintiff acts upon the misrepresentation in *reasonable reliance* upon its veracity in a manner that causes proximate injury.

*American Viking Contractors v. Scribner Equipment Co.*, 745 F.2d 1365, 1372 (11th Cir.1984) (*citing Marriott Corp. v. American Academy of Psychotherapists, Inc.*, 157 Ga. App. 497, 277 S.E.2d 785, 787 (1981)). Plaintiff's proof in this case fails four of the five elements.

First of all there was no false statement made by Excel. Plaintiff contends Mr. Delaney was told that Excel did not know whether it would bid the Seminole I contract itself. That was a true statement. The idea was under consideration because Excel did not manufacture some of the product lines required by the Seminole I specifications. (Allen Deposition at 70). This explanation for Excel's conduct is unrebutted and unimpeached. Therefore, the first two elements of the fraud claim fail.

The fourth element of Plaintiff's claim fails also. Plaintiff can offer no evidence to support a jury conclusion that it reasonably re-

lied on the representations of Excel. Ms. Allen told Mr. Delaney that Excel would not provide information to Codi about the quality of its product under any circumstances. It did not matter whether Excel intended to bid the Seminole Contract or not. Codi would not receive any proprietary information from Excel that was necessary to the submission of a bid on Seminole I.

Plaintiff's argument to the contrary is unpersuasive. Codi asserts that Excel had a duty to provide the necessary proprietary information for the Seminole bid. There is no support in the record for any such duty. Even if a duty existed, Excel told Codi in the very first conversation that much of the information they wanted would not be divulged. It is simply unreasonable as a matter of law for a business to rely to its detriment on what it unilaterally believed was the case in the face of a positive statement to the contrary. Codi relied on what it alone believed to be the state of affairs. Excel simply cannot be responsible for Codi's mistake.

In any event, Codi found substitute suppliers of beef to meet the requirements for submitting a Seminole bid. Codi claims Excel should have told them during the very first telephone call that it intended to submit a bid on the Seminole I contract. Had Excel done that, Codi would have had to find substitute suppliers in order to bid on the contract for itself. That is precisely what happened—Codi found substitute suppliers. There has been no detriment to Codi even if the court assumes there was a materially false statement made by Excel (a leap in logic the court is not at all prepared to make).

### CONCLUSION

Plaintiff has failed to provide evidence that would support a jury verdict that it had an exclusive right to sell Excel beef products to the military in the southeast. Even if the contract existed, it terminated for impossibility once the region for which the exclusive license was granted ceased to exist. With the creation of the consolidated commissary purchasing system, a new way of doing business began. Codi failed to react and must suffer its own losses for the Government's change in process.

Plaintiff has also failed to maintain its burden to provide evidence that Excel committed a fraud on it. There is no evidence that any of the statements made by Excel's agent, even if Plaintiff's version of the facts are taken as true, were false or known to be false at the time they were made. Even if the statements were false, Codi cannot show reasonable reliance upon them. Had Excel said what Codi argues it should have said, Codi would have had to find substitute suppliers in order to bid on Seminole I. Codi found substitute suppliers anyway. Excel cannot be made to pay for Codi's unilateral misunderstanding, mistake or whatever this was.

This Court is mindful that its Order could have a major adverse impact on the Plaintiff and could have a bearing on whether or not it can continue as a going concern. This realization was always in the court's mind as it considered this case and additional consideration was given the briefs and argument because of the ominous possibility. This consideration, however, cannot divert the Court from its obligation to follow established law without regard to the eventual outcome. Under the law of this jurisdiction (and throughout this country for that matter) the Defendant clearly has the facts and law on its side.

Judgment as a matter of law is appropriate in this case and Defendant's motion is, therefore, **GRANTED.**

SO ORDERED.